UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KERRIE NEWELL,

                Plaintiff,

-against-

STATE UNIVERSITY OF NEW YORK
WESTCHESTER COMMUNITY COLLEGE,

                Defendant.

**OPINION AND ORDER**

22-CV-08524 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Plaintiff Kerrie Newell ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action against her employer, the State University of New York Westchester Community College ("Defendant"), pressing two claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, for (i) discrimination and (ii) retaliation. (Doc. 2, "Compl."). Defendant filed, pursuant to the briefing schedule set forth by the Court, its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 7, 2023. (Doc. 25; Doc. 26, "Def Br."; Doc. 27). Plaintiff filed her opposition on March 7, 2023. (Doc. 31, "Pl. Br."), and the motion was briefed fully with the filing of Defendant's reply on March 21, 2023 (Doc. 32, "Reply").

For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff is a Technical Assistant of Media & Instructional Technology at Westchester Community College ("WCC") and has worked there for over 18 years. (Compl. ¶ 28). She alleges that WCC "adopted measures collectively known as its Covid-19 Policy," which includes "requirements or accommodations that employees wear surgical masks, take experimental vaccines, practice isolation and segregation, submit to medical examinations, and disclose vital statistics as conditions of employment." (*Id.* ¶ 7). Plaintiff alleges that WCC's Covid-19 Policy "is

intended to prevent the spread of Covid-19" and that "[t]he policy rests on the assumption that every employee, the plaintiff included, has or could have this disease." (*Id.* ¶ 8). WCC's Covid-19 Policy was applied to "all of its workers without considering the individualized medical assessment of each employee's health" and Plaintiff alleges that "[D]efendant's adoption of this policy is voluntary." (*Id.* ¶¶ 9-10).

Plaintiff, beginning in October 2020, began receiving emails informing her that WCC would begin requiring employees to take a "biological PCR test for Covid-19 in order to be able to come work in-person." (*Id.* ¶¶ 39-42). WCC's Director of Human Resources emailed Plaintiff on December 8, 2020 to remind her that "she was required to be tested for Covid-19 at Westchester Medical Center or she would not be permitted to come to her workplace as of December 11, 2020." (*Id.* ¶ 47). Plaintiff alleges that, as a result of receiving this email, she suffered "tremendous stress, depleted energy and aching back and neck" and also "had a hard time getting regular sleep." (*Id.*). Plaintiff received three emails, on February 25, 2021, March 4, 2021, and May 28, 2021, informing her that she was not in compliance with WCC's Covid-19 Policy because she failed to take a Covid-19 test and was therefore not allowed to enter her workplace. (*Id.* ¶ 49).

Plaintiff and all other WCC employees received an email on July 20, 2021 that as of August 16, 2021, all employees were to return to working in-person and were required to either take a Covid-19 vaccination, submit a religious exemption, or submit to weekly PCR testing. (*Id.* ¶ 54). Plaintiff was informed, on August 11, 2021, that she had to take the PCR test at Westchester Medical Center and could not select her own doctor or lab "unless she received permission from HR." (*Id.* ¶ 56). Thereafter, Plaintiff alleges that on February 8, 2022, she had a "phone meeting with Cathy Estella-Flashman in Human Resources" where she "invoked her ADA rights to protect her from further harassment, discrimination, and retaliation." (*Id.* ¶ 58). The following day,

Plaintiff allegedly mailed a "Notice of Discrimination and Harassment" to Ms. Estella-Flashman and subsequently filed a Complaint with the EEOC on February 23, 2023. (*Id.* ¶¶ 59, 66). Plaintiff was issued a Right to Sue Letter from the EEOC on July 6, 2022. (*Id.* ¶ 70). Plaintiff alleges that in retaliation for her mailing the "Notice of Discrimination and Harassment" to Ms. Estella-Flashman in Human Resources, her workspace was relocated "from the Academic Arts Building to the Library lobby area." (*Id.* ¶ 64).

## **STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

3

The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, we must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," the action must be dismissed "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chavis*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them to raise the

4

strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.    ADA Discrimination Claim

The three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is used to analyze discrimination claims under the ADA. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.").

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "[her] employer is subject to the ADA;" (2) "[she] is disabled within the meaning of the ADA or perceived to be so by [her] employer;" (3) "[she] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "[she] suffered an adverse employment action because of [her] disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). With respect to a failure to accommodate claim, a plaintiff must show that: (1) she "is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Dipinto v. Westchester Cnty.*, No. 18-CV-00793, 2023 WL 1438721, at *4 (S.D.N.Y. Feb. 1, 2023). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A plaintiff is "regarded as" having a disability if she establishes that "she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id*. § 12102(3)(A). A plaintiff has a "record of" a disability if she establishes that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1).

Plaintiff initially alleged that she brings her ADA discrimination claim "under both the 'regarded as' and the 'record of' prongs of the ADA." (Compl. ¶ 75). Plaintiff, in her opposition brief however, abandons her discrimination claim to the extent that it is brought under the "record of" prong of the ADA, stating that "Defen[dant] makes a perfect argument against the 1st and 2nd prong of the ADA" and that her claim is "based on the 3rd [p]rong of the ADA, the 'regarded as' clause." (Pl. Br. at 3). To the extent that Plaintiff initially alleged an ADA discrimination claim under the "record of" prong of the ADA, that claim has been abandoned and is, accordingly, dismissed. *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) ("As Plaintiff did not respond to Defendants on th[ese] points, he effectively conceded the

6

argument by his failure to respond." (cleaned up)); *see also Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 19-CV-08900, 2021 WL 429121, at *5 (S.D.N.Y. Feb. 8, 2021).

Plaintiff, with respect to the ADA's "regarded as" prong, alleges that WCC's Covid-19 Policy "regarded [her] as disabled with a contagious disease with an impaired immune system." (*Id.* ¶ 13). Similar attempts to challenge Covid-19 protocols under the "regarded as" prong have been repeatedly rejected by district courts in this Circuit. *See D'Cunha v. Northwell Health Sys.*, No. 22-CV-00988, 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023) (dismissing an ADA discrimination claim and holding that "[plaintiff] must allege facts suggested that she was regarded as presently having a disability. Even if she was perceived of being at risk of developing COVID-19 in the future, that would not plausibly state an ADA claim"); *Earl v. Good Samaritan Hosp. of Suffern*, No. 20-CV-03119, 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) ("perception of infectiousness is not the same as perceived disability and, in any event, Plaintiff's claim that the Hospital considered him infectious is wholly speculative"); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-02936, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023) ("To the extent that the plaintiff means to argue that the defendant regarded her as disabled because it regarded her as having COVID-19, that claim also fails."); *Kosiba v. Catholic Health Sys. of Long Island, Inc.*, No. 21-CV-06416, 2022 U.S. Dist. LEXIS 209772 (E.D.N.Y. Nov. 18, 2022) (dismissing plaintiff's ADA discrimination claim where the "allegations do little more than take issue with the safety protocols that were being enforced during the pandemic for unvaccinated healthcare workers — protocols which were clearly applied to all employees who were not otherwise granted a medical or religious accommodation"); *Sharikov v. Philips Med. Sys. MR, Inc.*, No. 22-CV-00326, 2023 WL 2390360, at *8 (N.D.N.Y. Mar. 7, 2023) ("Thus, having failed to allege facts from which it could be plausibly inferred that Defendant perceived Plaintiff as having COVID-19,

7

much less a non-transitory form of COVID-19 that would constitute an impairment, the 'regarded as' having a disability claim must be dismissed.").

Plaintiff has failed to allege that WCC regarded her as having a disability. Plaintiff instead merely alleges that she was subject to the same Covid-19 protocols to which all WCC employees were subject. Plaintiff does not allege that WCC regarded her specifically as having Covid-19 or being especially at risk of developing Covid-19. As Judge Vyskocil noted in *D'Cunha*, "[e]ven if [plaintiff] was perceived of being at risk of developing COVID-19 in the future, that would not plausibly state an ADA claim." 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023). Accordingly, Plaintiff has failed to state a claim for discrimination under the ADA.

II. ADA Retaliation Claim

"ADA retaliation claims are also evaluated under the *McDonnell Douglas* burden-shifting framework established for Title VII cases." *Dipinto*, 2023 WL 1438721, at *8. If the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate, non-retaliatory reason for its action, and the plaintiff then must show that the offered justification is pretext for retaliation. *Servello v. New York State Off. of Child. & Fam. Servs.*, No. 21-02541, 2022 WL 17411287, at *1 (2d Cir. Dec. 5, 2022). The elements of a *prima facie* retaliation claim under the ADA are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002).

Plaintiff has failed to allege a *prima facie* retaliation claim because she does not allege any adverse decision or course of action taken by WCC against her. Plaintiff alleges that Defendant retaliated against her by relocating her workspace after she mailed a "Notice of Discrimination of

8

Harassment"—where she alleges she "illustrat[ed] in detail, how her rights under the [ADA] . . . were being violated"—to WCC Human Resources. (Compl. ¶¶ 59-65). Plaintiff alleges that her workspace was relocated from the "Academic Arts Building to the Library lobby area." (*Id.* ¶ 64). Plaintiff does not allege that the library lobby area was in any way inferior to the Academic Arts Building. Even if Plaintiff did make such an allegation, "courts in the Second Circuit have held that the decision to relocate the plaintiff to a different allegedly inferior, office space is at most, the sort of minor annoyance, that does not rise to the level of actionable retaliation." *Alvarado v. United Hospice, Inc.*, No. 20-CV-10790, 2022 WL 4485379, at *17 (S.D.N.Y. Sept. 27, 2022) (collecting cases); *see also Garcia v. NYC Health & Hosps. Corp.*, No. 19-CV-00997, 2019 WL 6878729, at *9 (S.D.N.Y. Dec. 17, 2019) (dismissing a retaliation claim where "a reasonable worker would not have been dissuaded from engaging in protected activity on the basis of a relocation within the hospital alone"). Accordingly, Plaintiff's retaliation claim under the ADA is dismissed for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed with prejudice. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the Court dismisses Plaintiff's Complaint with prejudice as any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 25, (ii) mail a copy of this Opinion and Order to Plaintiff, and (iii) close this case.

**SO ORDERED:**

Dated: White Plains, New York
June 20, 2023

_____
PHILIP M. HALPERN
United States District Judge